**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

April 2, 2015

LETTER TO COUNSEL

RE: *Mary Elizabeth White v. Commissioner, Social Security Administration*;
Civil No. SAG-14-1663

Dear Counsel:

On May 22, 2014, Plaintiff Mary Elizabeth White petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Ms. White's reply. (ECF Nos. 14, 15, 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the decision of the Commissioner in part, and remand the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 205(g). This letter explains my rationale.

Following a previous denial of benefits, Ms. White filed her instant claims for benefits, alleging a disability onset date of February 1, 2011. (Tr. 210-18). Her claims were denied initially and on reconsideration. (Tr. 125-40, 146-50). An Administrative Law Judge ("ALJ") held a hearing on February 17, 2013. (Tr. 50-105). Following the hearing, the ALJ determined that Ms. White was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 32-49). The Appeals Council denied Ms. White's request for review, (Tr. 6-12), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. White suffered from the severe impairments of diabetes mellitus, obesity, cognitive disorder, and depression. (Tr. 37). Despite these impairments, the ALJ determined that Ms. White retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except should avoid climbing stairs, hazards such as moving machinery and heights, and concentrated exposure to odors, dusts, gases, and poor ventilation. In addition, the claimant can perform simple, unskilled work (i.e., not at production rate pace and low stress, defined as only occasional change in the work setting).

*Mary Elizabeth White v. Commissioner, Social Security Administration*
Civil No. SAG-14-1663
April 2, 2015
Page 2

(Tr. 40). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. White could perform her past relevant work as a dietary aide, and that, therefore, she was not disabled. (Tr. 44-45).

Ms. White raises several arguments on appeal, essentially contesting (1) the ALJ's assessment of her headaches and her psoriasis, (2) the assignment of weight to her treating dermatologist, and (3) the findings pertaining to her credibility. Although I find no flaw in the ALJ's adverse credibility assessment, the combination of the cursory analysis pertaining to Ms. White's psoriasis and an inadequate inquiry into Ms. White's ability to perform her past relevant work require remand for further explanation. In so holding, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. White is not entitled to benefits is correct or incorrect.

Ms. White began treating with her dermatologist, Dr. Peter Niebyl, in August, 2011, after having sought treatment for a rash from her primary care physician for several months. (Tr. 329-33). Dr. Niebyl noted that Ms. White suffered an entire body eruption rendering her feet and hands dry, hard, and swollen. (Tr. 329). Two months after starting treatment, Ms. White's hands were still peeling, fissuring, and bleeding. (Tr. 361). She continued to have rashes and lesions in April, 2012, (Tr. 399), and suffered another severe eruption in July, 2012, which covered about 85% of her body surface. (Tr. 360). The doctor attempted to treat her with methotrexate, but had to stop that treatment because it adversely affected Ms. White's white blood cell count. (Tr. 360). In August, 2012, Ms. White remained "broken out from head to toe, speckled with 1cm scaly hypopigmented patches scattered over her torso and extremities." (Tr. 360). She continued to be treated with another medication, Soriatane, in following months. (Tr. 359-60). At the hearing in February, 2013, Ms. White's attorney referred to the psoriasis being visible on Ms. White's face and hair. (Tr. 58). Ms. White testified that when she wakes up every morning, she has to shake her sheets to remove the peeling skin, and that she has shedded skin in her clothes every day when she takes them off. (Tr. 74). She testified that the psoriasis primarily affects her neck, feet, and hands and that she continued to be on the medication to treat psoriasis. *Id.*

The ALJ found Ms. White's psoriasis to be "not severe," repeatedly citing the fact that in August, 2011, Dr. Niebyl had predicted that her condition "should be" clear with treatment after about six months. (Tr. 38, 43). That prediction did not, in fact, come true. The ALJ's only comment on the records throughout 2012 stated that "it is noted in primary care treatment notes that the claimant's skin condition had improved during 2012." (Tr. 43). While there were certain periods of improvement, the ALJ did not fairly represent Ms. White's ongoing issues with psoriasis, and therefore did not provide adequate analysis of whether or not the condition was severe. Even if the ALJ correctly deemed the condition to be non-severe, the ALJ has a duty to assess its impact, if any, on Ms. White's RFC. Given that the ALJ rested her "not disabled" finding on a single job, the past relevant job she held as a dietary aide in a nursing home, it seems appropriate that the ALJ consider whether a condition involving flaking, scaly skin and at least occasional bleeding from her hands and arms would affect Ms. White's ability to perform that position.

*Mary Elizabeth White v. Commissioner, Social Security Administration*
Civil No. SAG-14-1663
April 2, 2015
Page 3

    The ALJ's reliance on the VE's testimony to support her conclusion that Ms. White could perform her past relevant work as a dietary aide is similarly problematic.  The ALJ's inquiry into the requirements of the position was as follows:

> Q. So, as the dietary worker, Ms. White, you would be putting food on trays, and taking the trays to patients, is that right?
>
> A. Yes.
>
> Q. And did you have any lifting over more than 10 pounds?
>
> A. No.
>
> Q. So, but you stood and walked all day?
>
> A. Beg your pardon?
>
> Q. You were standing and walking all day when you did that job.
>
> A. Yes.

(Tr. 63-64).  The ALJ made no inquiry into the amount of stress and/or change in the work setting that was required to perform the job, which would seem to be significant if the job involved constant walking throughout an unpredictable nursing home setting.  Given that the RFC assessment requires "only occasional change in the work setting" and "low stress," further inquiry was required to determine whether Ms. White retained the capacity to perform the job, as previously performed.

    Moreover, the record does not adequately support the ALJ's reliance on the VE's testimony for the proposition that Ms. White could work as a dietary aide.  The ALJ posited a hypothetical consistent with the RFC assessment and asked whether a person with that hypothetical RFC could perform any of Ms. White's past relevant work (which included laborer in a chicken factory, maintenance worker, or dietary aide). (Tr. 100).  The following sequence ensued:

> A. No, your honor.  Because according to the DOT positions were performed medium.  She indicated they were light.
>
> Q. Okay.  And how about as she performed them?
>
> A. As she performed them, yes, your honor.
>
> Q. Which ones?

*Mary Elizabeth White v. Commissioner, Social Security Administration*
Civil No. SAG-14-1663
April 2, 2015
Page 4

> A. Well, there's the laborer in the chicken factory. That's an SVP 2.
>
> Q. How about [INAUDIBLE]?
>
> A. And then I have to strike that. I guess the only one is she could do the maintenance. It's general labor because of the environmental factors as well. So, with the dietary aid, she performed that as light, and that's that SVP.
>
> Q. So, as she performed?
>
> A. Yes.

(Tr. 100). The ALJ interpreted that testimony to indicate that "the vocational expert concluded that, if so limited, the claimant could perform her past relevant work as dietary aide as actually performed." (Tr. 44). However, it is far from clear from the testimony whether the VE concluded that she could work as a dietary aide or as a maintenance worker. Although the VE provided alternative testimony suggesting that there were alternative jobs that could be performed by a person with Ms. White's RFC assessment, the ALJ made no findings at step five regarding those other positions. It is therefore appropriate to remand the case for further analysis at step four (after an appropriate consideration of Ms. White's psoriasis and any additional consideration of headaches warranted by the medical evidence)[1] and, if necessary, for analysis at step five.

For the reasons set forth herein, Ms. White's Motion for Summary Judgment (ECF No. 14) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 15) is DENIED. The ALJ's opinion is REVERSED IN PART as to the ALJ's analysis described above, and the case is REMANDED for further proceedings in accordance with sentence four of 42 U.S.C. § 205(g). The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

[1] The ALJ's evaluation of Ms. White's headaches, standing alone, does not warrant remand. Because I am remanding on other grounds, however, on remand, the ALJ should re-consider the medical evidence concerning Ms. White's headaches.